First 23-20260 United States v. Fucito, okay Mr. Gordon, the podium is yours. Thanks for your patience. May it please the court, counsel, my name is Jeremy Gordon and I represent the appellant in this matter, Mr. Scott Fucito. In my time before the court, I will discuss how the Southern District of Texas erred in three ways. First, I will discuss how the district court erred in assessing a five-level enhancement for distributing child pornography in exchange for a valuable consideration. Then I will discuss how the district court erred in overruling Fucito's objection to the five-level enhancement for having 600 or more images because duplicates were counted. And then I will discuss how the district court erred in determining that a minor role adjustment was not warranted. I'll go in that order unless the court would rather me go in a different order or if the court has any questions for me at the beginning. Go right ahead. First, I'll talk about how the district court erred in assessing the five-point enhancement for distribution of child pornography in exchange for a valuable consideration. Mr. Fucito was assessed a five-point enhancement for distribution and in this court, the court developed a four-pronged test for the application of 2G 2.2 B3B and that test is in the Halverson case. Now, the two key points that I'd like to discuss and point out as relevant here are that there was no actual agreement between Mr. Fucito and the undercover and that there was no valuable consideration that came from the undercover. Now, what happened in this case as it relates to this is that Fucito reached out to a person that ended up being an undercover and tried to get a response from that person. He then, on his own volition, sent a video to the undercover saying, have you seen this girl? He then sends another link, which is also child pornography and after that, he reached out and he talked about arranging a meet with the person that ended up being an undercover. He also talked to the undercover and said, I'm talking to you about this and I'm sending you these things so that you know that I'm not a cop, his words. Mr. Gordon, do you agree that under this section that the valuable consideration can consist in access to a child? I do agree and I believe that's in the comments that access to a child is something that can be a valuable consideration. I do believe that's in the comments to the guidelines. But Your Honor, what I would submit to the court is that in this particular case, the Halverson test indicates that the defendant must receive the consideration, the defendant must receive the thing. You're saying that, as you interpret our court's decision in that case, a defendant who is bargaining for access to a child in exchange for child pornography has to actually receive access to the child? I am saying that that's the way the Halverson case... Is that what your argument is? I'm saying that that's what the Halverson case shows us. I'm saying that when we look at the Halverson case, then what the Halverson case... Wouldn't that mean that whenever an undercover agent was involved in an exchange, that the defendant could never be enhanced for the undervaluable consideration? Because an undercover agent, of course, is not going to actually deliver. I am saying that if it's a situation where it's a police officer and a defendant, then the police officer, as the Halverson case indicates and as the guidelines indicate, the police officer, if the police officer were trying to get a plus five to the extent that they wanted to, then maybe they would look at pecuniary gain. Or maybe as part of their... My question is, the officer is never going to be in a position to actually deliver the valuable consideration, whether it's access to a child or money or anything like that. That is what the test shows, and that test has been reaffirmed twice in the unpublished cases of Dedual and the unpublished case of Fursland. This court had the opportunity to say, never mind about that fourth thing, but this court did not. In both those cases, this court reaffirmed the test in Halverson. What I am saying, Your Honor, is that this would be a situation where the police and the prosecutors would need to open their mind about how to get the evidence. What that means is... What would have to have happened in this case for the valuable consideration enhancement to the plus five, as you say, to apply? All right. In this case, well, first of all, to be clear, there would have had to have been an agreement. Well, let's assume there was, and let's assume that when Mr. Fichito was saying, Do you have a daughter? I could, you know, we could, you could bring her and we could meet and I could do X, Y, and Z. Let's assume that he was at least trying to make an agreement. Let's assume that. What else would have had to have happened for the enhancement to apply? Well, based on the fact that the fourth prong of the test states that the defendant has to receive the consent... Right. Just tell me then in your own words, what would have to happen for the enhancement to apply? Your Honor, it would mean that the defendant would have to get access to the child. Okay. Do you know? So, okay. I understand the court's concern. I understand the court's concern, but this court has already reaffirmed that twice and it's our position that based on the reaffirmance and that, that this would... What does, you said, what is the, I guess, what's the language of the section, the enhancement? What does it say with respect to valuable consideration? It says that the, it says that the defendant agreed to exchange for purposes of a valuable consideration. Okay. That's just agreed to exchange for purposes of a valuable consideration. I mean, that doesn't say anything about that it, no, I'm sorry. That doesn't say anything about it actually being received, right? The text of, the text of 2G2.2B3B does not state in it, to my knowledge, that there is a, that the defendant receives what they were going for. And with the fact, what's his case, Halvering, is that the name of the case? Halverson, Judge. Halverson. Were the facts, was it even necessary to the resolution in that case that the defendant received or didn't receive the valuable consideration? Well, Your Honor, in that case, I believe that the defendant did not receive the valuable consideration. What was the, I guess what I'm asking is, I don't remember, what's, what is the basis for the holding in that case? The basis for the holding, the basis for the holding in that case was that, I will have to, I will have to get that and go over it further in my rebuttal. Okay, that's fine. But in the other cases that exist, there was one case where the, where it was a matter of the defendant having access to a server where the CP was being exchanged, traded back and forth. And this court said that that wasn't enough. So when we, so when we look at what the test indicates, the test, the test indicates that this court has set out, indicates that in this situation, there, first of all, it's still our position that there was no agreement. But then second of all, that, that there was, that the test indicates that the defendant did not receive what they were going for, and as such, the plus five should, should not be assessed. And the case should be remanded back for that reason. Any more questions on that, that I can answer? Okay. Now, I would, at this point, I would go to the second portion of the, of what I was discussing, and that is with regards to duplicates. Now, in this case, the district court indicated that, that the five-point enhancement should be given for the amount of pictures that were on Mr. Facito's computer. And it indicated that, that duplicates should be counted. Now, in this case, the precedence investigation report indicated that duplicate, that the presence of duplicates, and the precedence investigation report indicated that there were duplicates. When you, when you mean duplicates, you mean a thumbnail sketch, a thumbnail, you know what I mean by a thumbnail, right? I do. Of this, just the same picture? I believe that they're talking about duplicate photos, like two photos that look the same. I know, but digitally, it's a separate thumbnail that just happens to be the same picture. I believe that's right. Ten times or a hundred times? I believe that's right. Yes, Your Honor. Now, if, if we were talking about hard copies of an image, and a defendant were distributing a hundred copies of the same photo, would you agree that the defendant has a hundred copies of that same hard copy, even though it's, I mean, a hundred copies, a hundred images, even though it's the same image? I would agree that, I would agree that if the defendant made a hundred copies, and had a stack of a hundred copies, and then distributed them, then that would be a hundred copies, a hundred photos for purposes of the, for the, of the guideline. Okay, why is it different than, with respect to a digital image? The difference is, Your Honor, that, that the, that the sending around, the sending around of photos, um, the sending around of photos does not, and first of all, Judge, when we talk about photos, um, there are, there are different places where photos might be. Photos might be in the trash. Photos might be in the recycling bin. Photos might be deleted. There are different places on a computer hard drive where photos might be. But secondly, the… Aren't they distinct images? I mean, they're distinct thumbnail, I don't know the terminology, but you know, when I, when I look at a thumbnail of, if I get my, my, my son's class photos in, and there's 50 photos, and each one of them is a distinct thumbnail with image 1, 2, 3, 4, 5, I mean, that's what we're talking about, right? Different images. Right, right. So, I mean, Your Honor, it's our position that duplicates do not increase the likelihood of dissemination. It's our position that, that, that having duplicate photos or having thumbnails does not increase the likelihood of dissemination, um, it does not, because, because if a person has more than one of the same photo or the thumbnail on their computer and they're asked to send something to one place or to send it to one person or another person, then they're only going to send one. They're not going to send the, they're not going to send the duplicates, they're not going to send the thumbnails, they're only going to send the one thing that they're asked for. They're not going to send multiple duplicates of the same thing. So, and so in that regard, it's not, because when we look at the cases, um, and we look at why this was brought forth, it was because of the PROTECT Act and because of the need to, the need to protect and then, and it talks about dissemination. But it's still our position, Your Honor, that there is no risk, there is no further risk of dissemination by having duplicates that are on the same computer. So the commentary to the guidelines here says, when determining the number of images, each photograph, picture, computer or computer generated image or any similar visual depiction shall be considered to be one image. So each, what's, what is your interpretation of this due to the word each? It is our interpretation that duplicates do not count. Duplicates of thumbnails do not count in the determination of each. Okay. And it's our determination, it's our determination, it's our argument. Is that an open question in our circuit? Is that an open question in our circuit? Yes, Your Honor, it is. The question of duplicates is an open question in this circuit. And are duplicates, are duplicates, do they count? Now, there is a case where, in that case I believe is the Havens case, and the courts, in that case, the court said, this court said that the defendant did not bring forth any information that one was a duplicate or that one was not. So then at that time, the court did not say, we hold that duplicates always count. And that's why, Your Honor, it's an open question in this court. Should, should the counting of duplicates differ depending on whether the duplicate is a computer image versus a hard copy image? Because other circuits have counted duplicate hard copy images, so why would computer images be treated differently? Your Honor, for the same, for the, for the reason that the, the, the possession of multiple different duplicates does not, the, the punishment for multiple different duplicates does not, does not continue, does not increase the risk of dissemination. Because they might be in the trash, or they might be in the recycling bin. And because a person is not, because again, a person is not disseminating more than one duplicate, more than one picture, more than one duplicate when they're disseminating. If someone says, please send me a picture or please send me a photo, the person is going to respond by sending only the one. You know, how does the, how do the guidelines treat a video in terms of number of images? I believe it's 150, it's either 75 or 150 off the top of my head. According to the time of the video? It's basically breaking the video up into discrete images according to time? I believe that's right. I mean, so, you know, I haven't, I haven't done the, I haven't looked at this carefully, but it strikes me that, you know, say a video is a minute long and we're breaking it up into discrete images, aren't, each one of those is going to be almost the same with very tiny variations in each image and yet we're counting them as multiple images, aren't we? Well, that, well, that's true with regards to, because of the way videos are made and because of frames and all those things. But I would submit to the court that, that, that is a different analysis. Okay. Because of the, because of the differences between photos and videos. Okay. And the differences of, and the reasoning, and the, and the differences between photos and videos and what somebody is looking for when they're, when they're going through photos as opposed to videos. Okay. Now, with that, my time is up. If there are any more, if there are no more questions for me at this point. We'll see you back on rebuttal. Thank you, Judge. Thank you, Mr. Gordon. May it please the court. Seth Gagliardi for the United States. In this case, the district court did not err by applying the enhancement for exchange for valuable, distribution for exchange for valuable consideration and the quantity of images and properly denied the minor role reduction. As to the enhancement for distribution in exchange for valuable consideration, it was not clear error for the district court to find that there was an agreement and there is no legal requirement for the valuable consideration to be received. As for the quantity of images, the clear text of the guidelines and the purpose of the legislation that affected those guidelines indicates that there was an agreement. As far as the minor role reduction, Mr. Fusito failed to establish that he was substantially less culpable than the average participant. What do we do with the language in Halverson, the fourth prong, the valuable consideration came from that person? Yes, Judge Junkin. As Judge Willett knows, he was on that panel. It was a very brief opinion and it was found to be harmless error. Now, on page 652 of the opinion, it does lay out the four factors. The fourth factor is the valuable consideration came from that specific person. Just below that, what it says is the government failed to show that the defendant had the specific purpose of obtaining valuable consideration from that person. It is not very clear, and that comes across in the Randall opinion and the Oliver opinion out of the Ninth and Sixth Circuits, whether this court actually meant that the valuable consideration had to be received because it was such a short analysis in that case due to the harmless error factor there. So . . . Do we have to just distinguish Halverson, clarify? I think we need to clarify Halverson, Judge Willett. Of course, this panel can't overrule another panel and we're not asking this panel to do that. What we're asking this panel to do is just simply clarify the test and distinguish between those two sentences where the fourth factor is and then the follow-up that says the government didn't establish that the defendant was seeking valuable consideration from that . . . How often have we clarified the previous panel opinion? I think some judges on this court would disagree with you that the rule would . . . our rule of . . . would allow that. I can understand that, Judge Dennis. I just . . . the way the government reads Halverson is that it did not go into specific thorough analysis and the guideline is very clear as the Randall case out of the Ninth Circuit and the Oliver case out of the Sixth Circuit, both state, that the guideline commentary is very clear that the valuable consideration doesn't have to be received and the way the government reads Halverson, this court didn't have an opportunity to really weigh in on that thoroughly. We do not think that it's a matter of distinguishing or overruling another panel. It's just a matter of clarifying the test. In Halverson, I mean, I guess I could ask my friend, Judge Willett, here, but I'll ask you, did the outcome of the case determine on whether the defendant actually received the valuable consideration? The outcome of the case turned on whether the government had presented any evidence that the defendant specifically sought valuable consideration from a specific individual. That's the language at page 652 at the end of that test. Then critically, Halverson also in favor of us on the no clear error on the factual finding as far as an agreement, Halverson found that the government did present evidence in that case to satisfy that factor of the test and the factual circumstances of our case are much more advantageous to that finding by the district court than they were in Halverson. In Halverson, what the district court had was an individual on a peer-to-peer network who was sophisticated, engaged in that network for the specific purpose of generally gaining better opportunities to receive child pornography and then distributed to the undercover agent in that case without any specific request for anything or conversation that was cited. In our case, Mr. Fusito, and this is PSR paragraph 36 to 38, specifically reached out to an undercover agent and over the course of about two weeks had numerous conversations and engagements with that undercover agent in which he distributed child pornography multiple times, at least twice, one extensive video of about twelve minutes, another video of about a minute and a half, and they were having these conversations about where they were both geographically located, if they were close to each other, Mr. Fusito was offering that he had had sex with his girlfriend and the girlfriend's nine-year-old daughter was asking the undercover agent if he had kids and then shortly thereafter was requesting access to the undercover agent's purported four-year-old daughter to help groom that daughter and to show the agent how to help molest that daughter, even suggesting at one point that they could give that four-year-old Ben a drill so she wouldn't understand what had happened during those events. We feel that if Halverson feels that that factor was met in that case, we've certainly shown that there was an agreement to an exchange which can be inferential and can be an implied agreement as the Oliver case makes clear and as the Morehouse case out of the Fourth Circuit makes . . . Any time a possessor of child porn in speaking with an undercover agent mentions access to a child, that's going to be an implicit agreement? Is that what you're saying? Your Honor, it's going to depend on the totality of the circumstances. This is going to be a factual finding that the courts are going to have to go into very deeply and understand what the engagement was between those agents and the environment of where they are, whether it's a peer-to-peer network or in this case, these networks were specifically what's called IRC chat rooms. These chat rooms had very explicit titles and understandings of what was going on in these chat rooms. The people involved in them, and it's PSR paragraph 32 if you want to see some of those titles, it's baby, toddler, sex, ten-year-old kids, pedo-moms. These are very explicit. People that go in these chat rooms are seeing child pornography in one case, in one chat room, posted every minute through a bot. They are there for the specific purpose of obtaining additional child pornography. So you have to look at all those circumstances and much like the Albrecht case talks about conspiracy law and circumstantial evidence to conclude that there's a conspiracy, you're going to have to look at the actions of the people involved, whether it's an undercover agent and a defendant or two defendants that are engaging in this exchange for valuable consideration. As Judge Duncan mentioned, the Albrecht case is very clear that it would be sort of perverse if there was an undercover agent, which of course they can never give access to a child or child pornography, it would be a perverse result if in that case you could never get this enhancement. If anything, the undercover agent is of course, I think you can infer that the allow them to suggest or agree to whatever they're willing to agree to, so they can hold them responsible for the specific intent of seeking valuable consideration in exchange for distribution of child pornography, which is of course exactly what the 2016 amendment to this guideline was seeking to do. Yes. I obviously don't know how this works, but I'm assuming that an conversation like this could also not offer, I don't know, could an undercover agent offer access to more child pornography in exchange, maybe he could make the offer. They might be able to make an offer, but of course they can never deliver on that. They could never deliver that. So that would go to the fourth factor, they could absolutely never deliver that valuable consideration. Does the undercover agent ever agree and say, yes, I'll bring my daughter to the meeting, or do we just automatically say it's an implicit agreement? Certainly, Your Honor. If there were facts in the case to show that the undercover officer said that, we would certainly cite them and consider that additional proof to show the implicit agreement. That would certainly help us. I'd love to have it in this case. I don't. Do you ever have it? I mean, I've never seen a case where an undercover agent did that. We've seen cases where undercover agents, and in fact in this case, Mr. Fusito was previously convicted in 2009 of engaging with an undercover agent that was acting as a fourteen-year-old child. So you may have a fourteen-year-old child that's a purported fourteen-year-old child that's an undercover agent that can make those promises or suggest meeting up, and that would be additional evidence to support the agreement or agreement to an exchange for valuable consideration. If there are no further questions on that, I'll move on to the enhancement for the quantity of images. Judge Duncan, as you discussed, there are other circuits, specifically the Fourth Circuit in Price, the Sixth Circuit in McInerney, and the Eighth Circuit in Sampson that have all gone into the reasoning behind both the guideline text, straight-up guideline text in 2G 2.2 comment 6B that states that each image, each computer-generated image or each picture, each photo counts. It does not distinguish between duplicates or uniques, and it does not distinguish between hard copies and digital copies. And the Fourth, Sixth, and Eighth Circuits have all found that duplicate images are to count. Now there are some cases out there in the Third and Seventh Circuit that they commented without analysis that the district courts in those cases did not count duplicate images, but they did not specifically say that that was either the correct way to read the guidelines or anything like that. It was really dicta in those cases, which was Goff and another case that slips my mind on the Third Circuit. But the intent both in the guideline commentary is clear. Each image, and the 2003 Protect Act was very clear, as discussed in Price, that the specific intent there was to limit the overall victimization, which they thought that basically the more images you have, the more victimization you're going to have, and the greater likelihood of distribution that you're going to have. But it doesn't rely on distribution. The fact of the matter is that this guideline applies to not only receipt distribution, but also possession. It does not require that you distribute anything. So our position is that the guideline commentary, just straight up textual reading of the guideline commentary before you even get to the intent of the Protect Act, makes clear that each image is to count and was properly counted in this case. Now Judge Duncan, you brought up the amount of images for each video. In this case we had, and again this is paragraph 30, I believe it's paragraph 39 of the PSR, 38 and 39 of the PSR, talked about the videos that were downloaded. The commentary states that each five-minute video counts for 75 images. But if it's substantially longer than five minutes, it can count, you can vary upward from that. In one image, or one video in this case, was a 38-minute video. Another video was a 12-minute video. So there were videos in this case that were significantly longer than five minutes that the district court did not even bother counting up that high because it had already reached that 600 image threshold to get to that plus five enhancement. Are there any questions on that section? Okay, going on to the minor rule reduction, the district court's finding that no minor rule reduction was justified in this case was plausible in light of the record. The PSR addendum, I believe it's page 4727, states that the average participant in this was the user that went into these IRC chat rooms and just distributed, exchanged, downloaded child pornography.  The only thing that Mr. Fusito really said in the district court or really in his brief here was that he wasn't a manager, wasn't a leader, but never established in the district court that he was substantially less culpable than the average participant. He was basically the average participant in this case. But if you look at paragraph 139 and 140 of the PSR, he also had some significant knowledge of the working of these servers. He'd been involved in these chat rooms for years and he discussed with some of the co-defendants in this case how those chat rooms worked, who was in charge with them. He also did receive something of value from this enterprise. He received additional child pornography throughout the course of this. Our position is that the court should affirm in all these . . . in this case because the district court properly applied the enhancements and denied the minor rule reduction. If the court has no further questions. Okay. Thank you, Mr. Carliardi. Appreciate it. Mr. Gordon, welcome back. You have five minutes. Thank you, Judge. Thank you, Judge. I went back and I looked at the Halverson case and what was interesting about the Halverson case is that Sergeant Baker . . . Detective Baker indicated that in that case, Halverson had not sought anything from him when distributing . . . when distributing the child pornography. But in our opinion, in our position is that this court does not need to clarify or engage in any further clarification over the Halverson test. To the extent that this case means and that the Halverson case means that an undercover officer would not be able to engage in activity that could get a plus five. Our position is that's fine because there's other things that the police can do in order to try to get that plus five. They can subpoena records. They can get records. So your position is, if we accept your position as to what Halverson means, a undercover officer can never . . . if an undercover officer is involved in a purported exchange for valuable consideration in a child porn case, we can never get a plus five enhancement, ever. Our position is that for . . . if the facts are similar to this, then that would not equal a plus five. Now the police officer . . . When could an undercover police officer ever get a plus five in an exchange for any valuable consideration? By interviewing the person after they've arrested him, saying, have you done this with anybody else? Who is it? What are their names? What did you give them? What do your records say? What do your e-mails say? What do your messages say? That's how the police officer could do it. And also, this court could say, could recommend to the commission, the sentencing commission, y'all need to fix this because . . . But we've already read the language of the enhancement, and the language of the enhancement says nothing about actual receipt of the consideration. So what are we supposed to say to the sentencing commission? Ask the commission to explain what the problem is, ask the commission to fix it the same way as the Supreme Court did in McClinton, saying this is a problem and the commissioners, y'all need to fix it. I do want to talk for just a quick minute about the minor rule enhancement. Important to note is that the district court did not make any . . . did not give any analysis with regards to the enhancement. The police sent an investigation report, said what they said, but on the bench during the sentencing hearing, the district court judge flatly said overruled and said very little and did not do their own analysis, did not give any analysis with regards to any factor, any of the factors or anything else. Now it is true that in the government's brief, they indicate that the court is not required to go into an in-depth point by point by point by point by point by point by point by point by point by point by point by point  by point by point. But in this situation, there was nothing that was said. No going into any factor. It's our position that that is a problem that warrants remand back to the district court for that. And finally, I would go back to my point about the need for . . . the desire and the need for transmissibility around the duplicates. If a person has duplicates on their own computer, then that does not get . . . then that does not cause more of a desire for transmissibility or more of a desire or not whet the appetite of any such persons even more. Having multiple or having one. I understand the differences between hard copies and digitals, but if a person is going onto their computer to get a thing, the fact that there's more than that thing does not make it more transmissible or more or whet the appetite of more people is our position. Are there any questions for me? I don't think so. Thank you. I appreciate it. Thank you both very much. The case is submitted.